## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **BUON VINO MANUFACTURING INC.** ) | |
| 65 FRANKLIN BLVD #2 ) | |
| CAMBRIDGE, ONTARIO ) | CASE NO: |
| CANADA N1R8G7 ) | |
| ) | JUDGE: |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| **LUKAS OSTROWSKI D/B/A RICHMOND** ) | |
| **WINERY A/K/A UBREW USA** ) | |
| 64 TANNER DR. ) | |
| LONDON, ONTARIO ) | |
| CANADA N5W6B6 ) | |
| ) | |
| Defendant. ) | |
| ) | |

_____

## COMPLAINT
## (JURY DEMAND ENDORSED HEREIN)

_____

Plaintiff Buon Vino Manufacturing Inc. ("***Plaintiff***" or "***Buon Vino***") by and through counsel, and for its Complaint against Defendant Lukas Ostrowski d/b/a Richmond Winery a/k/a UBREW USA ("***Mr. Ostrowski***" or "***Defendant***"), states as follows:

### INTRODUCTION

1.     Defendant is engaged in: (i) the unauthorized sale of materially different products under Plaintiff's brand name and using Plaintiff's trademarks; (ii) an attempt to fraudulently register Plaintiff's intellectual Property as his own and hijack Plaintiff's brand; and (iii) reverse passing off, whereby he re-labels plaintiff's products and sells them as his own. These activities are harming the consuming public and infringing upon Plaintiff's intellectual property rights.

## PARTIES

2.     Plaintiff is a corporation organized under the laws of Canada.

3.     Plaintiff is a well-known, highly reputable, and established manufacturer and retailer of filtration equipment and filter pads for home and small industrial winemaking (the "***Products***").

4.     Plaintiff has operated in the wine equipment industry for over 40 years and its Products have garnered a reputation for quality.

5.     Defendant is an individual residing in Ontario, Canada.

6.     Defendant is selling the Products without Plaintiff's authorization or consent and in violation of Plaintiff's rights.

## JURISDICTION

7.     This Court has original subject matter jurisdiction over Plaintiff's trademark claims pursuant to 28 U.S.C. § 1338(a).

8.     This Court also has original subject matter jurisdiction over Plaintiff's unfair competition claims, pursuant to 28 U.S.C. § 1338(b), because they are joined with Plaintiff's substantial and related trademark claims.

9.     This Court has supplemental subject matter jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's remaining claims because they form part of the same case or controversy as Plaintiff's trademark and unfair competition claims.

10.     This Court has general personal jurisdiction over Defendant by operation of Fed. R. Civ. P. 4(K)(2) because Defendant is not a resident or otherwise subject to general jurisdiction in any one state, yet Defendant has sufficient contacts with the United States generally so as to satisfy the requirements of substantive due process.

11.     Specifically, Defendant has purposefully availed himself of the United States market by, *inter alia*, listing products on the United States Amazon marketplace, making sales to United States citizens and residents, shipping products into the United States, operating a fully interactive website through which he sells products in the United States, filing applications with the United States Patent and Trademark Office, and

12.     In fact, Defendant has intentionally targeted the United States market, calling his business "UBREW USA," offering "FREE SHIPPING USA Wide," and advertising its "Wholesale pricing which is the lowest in the USA."



*<u>Figure 1</u>: Screenshot from the homepage of Defendant's website, ubrewusa.com (collected on November 24, 2021).*

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) and (3) because there is no district in which the action may otherwise be brought as provided in § 1391, and the Defendant is subject to this Court's personal jurisdiction with respect to this action for the reasons provided above.

## BACKGROUND

### *Plaintiff's Business*

14.    Plaintiff sells the Products bearing various common law trademarks including, but not limited to:  BUON VINO, SUPER JET, MINI JET, and Buon Vino's logo (displayed below) (together, the "***Trademarks***").



*Figure 2: The Buon Vino logo.*

15.    Plaintiff has spent considerable resources to develop, market and protect its Trademarks, which have become a symbol of quality and effectiveness in the industry.



*Figure 3: A reminder from Buon Vino's website, buonvino.com, for consumers to check for the Buon Vino trademark when buying filter pads.*

16.    Plaintiff sells the Products through its distribution network and on third-party e-commerce websites like Amazon.

4889-3958-2212, v. 1

17.     Plaintiff's distribution network is comprised of certain wholesalers and authorized resellers to and through whom Plaintiff sells the Products (together, "***Authorized Resellers***").

### *The Resale Policy*

18.     Plaintiff's Authorized Resellers are obligated to, and do sell the Products in accordance with Plaintiff's Authorized Resale Policy (the "***Resale Policy***"). The Resale Policy is attached hereto as Exhibit A.

19.     Plaintiff uses the Resale Policy to: (i) protect its customers by ensuring the quality of its Products, their presentation, and the associated services meet certain standards; (ii) protect its Authorized Resellers by promoting fair competition between Authorized Resellers; and (iii) protect its brand, its goodwill, and its valuable intellectual property, including its proprietary images, designs, content, and Trademarks.

### *Customer Protections*

20.     The Resale Policy requires Authorized Resellers to abide by certain quality controls related to the origins, packaging, storing, and shipping of the Products they sell.

21.     Authorized Resellers must comply with relevant material handling protocols in the Resale Policy and use only "secure, dry, climate-controlled warehouses or storage facilities."

22.     Authorized Resellers must also purchase the Products only from Plaintiff or its authorized distributors, helping Plaintiff ensure the Products sold under its marks were in fact manufactured by Plaintiff.

23.     Additionally, Authorized Resellers are obligated to maintain customer service phone and email response functions to help facilitate complaints and/or returns.

24.     The Resale Policy also prohibits alteration of the Products' original packaging, labeling, or literature.

25.     Specifically, the Resale Policy provides that:

> Reseller shall sell Products in their original packaging. Relabeling, repackaging (including the separation of bundled Products or the bundling of Products), and other alterations to Products or their packaging are not permitted. Tampering with, defacing, covering, or otherwise altering any serial number, UPC code, batch or lot code, SKU or other identifying information on Products or their packaging is prohibited. Reseller may not remove, translate, or modify the contents of any label or literature on or accompanying the Products.

26.     The Resale Policy also requires that Authorized Resellers cooperate with Plaintiff with respect to any Product recall or other consumer safety information dissemination efforts.

27.     Because none of these protections are assured when a customer purchases from an unauthorized seller, Plaintiff strongly encourages its customers to purchase through Plaintiff's approved channels and cannot and does not warrant products of unknown origin, quality, and condition.

28.     The Resale Policy also specifies that Plaintiff's product warranties are void if sold by unauthorized resellers such as Defendant.

29.     Specifically, the Resale Policy sets forth that:

> Resellers in compliance with this Policy may offer Buon Vino's consumer warranty to any proper purchaser of the Products. Failure to comply with this Policy will result in the total forfeiture of Reseller's right to offer Buon Vino's consumer warranty, and any warranty extended while in violation of this Policy shall be null and void.

### *Authorized Reseller Protections*

30. In addition to protecting customers, the Resale Policy is designed to encourage fair competition between Authorized Resellers and ensure that becoming an Authorized Reseller is a worthwhile venture.

31. By requiring resellers to abide by certain quality controls, prohibiting sales practices that sacrifice Product quality, and directing resellers to purchase from approved sources, the Resale Policy ensures a level playing field for Plaintiff's distributors and retailers.

32. Healthy, legitimate competition is good for Plaintiff's customers and Plaintiff's Authorized Resellers.

### *Brand Protections*

33. The Resale Policy limits resellers' use of the Trademarks to avoid brand dilution, tarnishment, and confusion as to the origin of the Products.

34. Specifically, the Resale Policy provides that:

> Resellers that comply with this Policy have a limited, non-exclusive, nonsublicensable, revocable license to use Buon Vino's trademarks and copyrights in connection with the sale of the Products. Reseller shall not alter, modify, or change any trademark or copyright, nor shall Reseller use any trademark or copyright other than for the promotion and sale of the Products, nor shall Reseller use any trademark or copyright in any manner that negatively impacts such trademark or copyright or Buon Vino. Failure to comply with the Policy will result in the automatic revocation of the license granted herein and a total forfeiture of the rights granted herein. Buon Vino reserves the right to revoke this license at any time for any or no reason

35. The Resale Policy further provides that without the written consent of Plaintiff, resellers are prohibited from selling on Amazon.

36.     Plaintiff takes these steps to protect its good name and goodwill.

37.     Plaintiff has invested significant time, effort, and resources to ensure that the consuming public has a positive perception of Plaintiff and Plaintiff's Products.

38.     Plaintiff's reputation and goodwill is a valuable resource and one which Plaintiff is careful to protect.

39.     Resellers who provide materially altered and inferior Products harm Plaintiff's reputation and goodwill because the failings of such Products are associated with Plaintiff, not with the resellers.

40.     Plaintiff has implemented these measures to preserve brand integrity, maintain the high quality of the Products, and ensure customers are receiving genuine, defect-free products.

41.     When sellers fail to abide by these requirements, it poses risks to customers and damages the goodwill and reputation of Plaintiff.

### _The Growth of E-Commerce_

42.     The explosion of e-commerce websites, particularly Amazon, has created problems for manufacturers in terms of ensuring that products being sold are genuine, defect-free products.

43.     In this e-commerce age, unauthorized resellers can obtain a manufacturer's products from a variety of sources and sell them anonymously online.

44.     Many times these products may be materially different in that they are damaged, expired, sold without warranty, or of an inferior quality. However, given the nature of e-commerce sales, consumers unknowingly purchase these products believing them to be genuine.

45.     Indeed, on Amazon.com, all sales of a particular product are sold under a single Amazon Standard Identification Number (ASIN), so consumers face an even more significant challenge trying to determine whether a product is coming from an authorized reseller offering genuine products or from an unauthorized reseller offering an inferior version of such products.

46.     This is precisely the problem that e-commerce websites create; anonymous third parties sell products that may be inferior or defective and consumers are ultimately harmed when they receive non-genuine products.

### *Defendant Begins Selling the Products Without Authorization*

47.     At least since August 22, 2021 Defendant has been selling materially altered Products bearing the Trademarks without authorization, without Plaintiff's consent, and in violation of the Resale Policy.

48.     Defendant sells the Products online on Amazon.com, through ubrewusa.com, and possibly other websites.

49.     Because Defendant is an unauthorized reseller of the Products, Plaintiff cannot verify that Defendant abides by Plaintiff's quality controls or its customer service requirements.

50.     Upon information and belief, Defendant does not abide by Plaintiff's quality controls nor does Defendant offer the same level of customer service as Authorized Resellers.

51.     Improperly handled Products could be damaged, causing them to leak, operate imperfectly, or experience other unexpected issues.

52.     Per the terms of the Resale Policy, Defendant is prohibited from selling on Amazon.

53.     Because Plaintiff cannot verify that Defendant abides by Plaintiff's quality controls or its customer service requirements and Defendant is not authorized to sell on Amazon, Defendant cannot offer Plaintiff's product warranty.

54.     Amazon's Marketplace Items Condition Guidelines[1] require that any product that is listed as "New" come with the "Original manufacturer's warranty, if any."

55.     Defendant lists the Products for sale as "New" despite the fact that because Defendant is not authorized to sell, such Products sold by Defendant do not come with Plaintiff's warranty.

56.     These issues mean that customers are not getting what they expect or what they pay for. They are receiving materially altered products and the differences have a materially detrimental impact on the customer's experience with the Products and, accordingly, with Plaintiff's brand.

57.     As a result, the Products sold by Defendant are non-genuine Products, and such Products are inferior to Products sold by Resellers, as they do not come with a warranty or the same suite of services as Products sold by Resellers. Additionally, Products sold by Defendant do not appear to be handled with the same quality controls as Products sold by Resellers, which may result in a spoiled, broken, or otherwise defective Product.

---

[1] The Guidelines are available at:
https://www.amazon.com/gp/help/customer/display.html?nodeId=201889720

4889-3958-2212, v. 1

58.  By selling non-genuine and inferior Products, Defendant is harming consumers and is infringing on Plaintiff's rights in and to the Trademarks. The sale of non-genuine and inferior Products has tarnished and diluted the goodwill and distinctive quality of the Trademarks.

### *Defendant Improperly Suggests Affiliation with Plaintiff*

59.  Not only does Defendant sell inferior Products under Plaintiff's brand name, it goes beyond merely listing Plaintiff's Products for sale to improperly suggest an affiliation or association between UBREW USA and Plaintiff.:



*Figure 4: A screenshot of Defendant's website, ubrewusa.com, prominently displaying Plaintiff's trademarks, images, and motto. (collected Nov. 24, 2021)*

60.     Defendant prominently features Plaintiff's Trademarks, logos,

61.     Defendant even specifically advertises its "close relationship with many suppliers and large purchasing power" as a point of difference.

### *Plaintiff Demands Defendant Cease Selling the Products*

62.     On several occasions, beginning on August 31, 2021, Plaintiff contacted Defendant to request the Defendant cease its infringing sales of the Products.

63.     However, Defendant did not discontinue its sales.

64.     Not only did Defendant continue making infringing sales after Plaintiff requested that such conduct be stopped, but Defendant filed a fraudulent trademark application in an attempt to hijack Plaintiff's brand.

65.     On August 21, 2021, Defendant filed an application with Serial Number 90895120 to register "BUON VINO" covering wine tasters and wine-tasting siphons in Class 21. Defendant's application is attached hereto as Exhibit B.

66.     However, upon information and belief, Defendant has never manufactured the goods claimed in the application – despite the application being filed under a Section 1(a) basis, meaning the goods have already been produced and used in commerce.

67.     Further, upon information and belief, the specimen submitted to the USPTO in connection with the application depicts not a Buon Vino product, but a clamp manufactured by Fermtech.

68.     Upon information and belief, the application's primary purpose was to allow Defendant to gain control of listings made under the Buon Vino brand on Amazon.

69.     Amazon operates a program known as "Brand Registry," which enables enrolled brands to prevent infringement and counterfeiting and enhance brand visibility on the platform.

70.     Submission of the trademark application to Amazon appears calculated to enable Defendant to file knowingly false infringement reports against Plaintiff's listings – listings made by the actual brand owner and ultimate source of the Products – and seize control of the Amazon marketplace with respect to the Products.

71.     Fortunately, Plaintiff's own trademark application (with Serial Number 97044870) has enabled Plaintiff to retain control of its brand on Amazon, despite Defendant's willful and deceptive campaign to hijack that important distribution channel.

72.     Following Plaintiff's discovery of the fraudulent trademark application, undersigned counsel directed correspondence to Defendant on September 24, 2021, which demanded again that Defendant cease its unauthorized sale of the Products and abandon the fraudulent trademark application (the "***First Letter***"). The First Letter is attached as Exhibit C.

73.     However, Defendant continued to sell the Products and its application remained live.

74.     On October 14, 2021, undersigned counsel sent a second letter (the "***Second Letter***"), again informing Defendant that its sales were unauthorized and in violation of Plaintiff's intellectual property rights, and again demanding that Defendant withdraw its trademark application. The Second Letter is attached as Exhibit D.

75.    The Second Letter also informed Defendant that its continued sale of Products now amounted to willful trademark infringement and Plaintiff again demanded that Defendant immediately cease selling the Products.

### *Defendant Engages in Reverse Passing Off*

76.    In addition to selling materially altered Products using Plaintiff's Trademarks, Defendant has also re-labeled Plaintiff's Products and sold them under his own brand, UBREW USA.



*Figure 5*: A screenshot of a UBREW USA Amazon product listing for what appears to be *Buon Vino products, re-labeled as UBREW USA products, and titled as such for sale.*

77.     Upon information and belief, Defendant has never manufactured filter pads, and does not have the capacity to do so.

78.    Applying these labels is also in direct violation of the Resale Policy, which specifically states that: "Relabeling, repackaging . . .  and other alterations to Products or their packaging are not permitted."

79.    On November 9, 2021, undersigned counsel sent a third demand letter (the "***Third Letter***") to Defendant again demanding that it cease selling the Products, reminding Defendant that its conduct violated Plaintiff's intellectual property rights, and

demanding that Defendant cease re-labeling the Products and selling the Products under its own name. The Third Letter is attached as Exhibit E.

80.     As of the date of this filing, Defendant continues to sell the Products in violation of Plaintiff's proprietary rights.

### Count One
### False Designation of Origin - Passing Off
### (15 U.S.C. §1125(a))

81.     Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

82.     Plaintiff is the owner of the Trademarks.

83.     Defendant uses the Trademarks in connection with its sale of the Products without Plaintiff's authorization or consent.

84.     The Products sold by Defendant bearing the Trademarks do not come with Plaintiff's consumer warranty. *See* Ex. A.

85.     Plaintiff requires that all its resellers abide by certain quality controls with respect to the storage, handling, and shipping of the Products. *Id.*

86.     Plaintiff requires that all resellers provide a level of customer service to all consumers of the Products. *Id.*

87.     Upon information and belief, Defendant does not abide by these quality controls and does not offer the requisite level of customer service.

88.     Because Defendant does not abide by these quality controls or provide the necessary customer service, and because the Products sold by Defendant do not have a consumer warranty, these Products are not genuine and are materially different from Products sold by Plaintiff or Resellers.

89. Defendant's unauthorized sale of the Products bearing the Trademarks has infringed on and damages the value of the Trademarks.

90. Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products sold by Defendant come with Plaintiff's consumer warranty and have been handled in accordance with Plaintiff's quality controls when, in fact, they do not.

91. Confusion is more likely given that Defendant lists the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendant's sale of the Products.

92. Defendant's use of the Trademarks is also likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

93. Defendant informed Plaintiff that its sales of the Products infringed on Plaintiff's rights in the Trademarks.

94. As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

95. Plaintiff is entitled to recover damages from Defendant's infringement and disgorge any profits from their infringing sales of the Products.

## **Count Two**
## **False Designation of Origin – Reverse Passing Off**
## **(15 U.S.C. §1125(a))**

96.     Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

97.     Plaintiff develops, produces, distributes, and sells the Products.

98.     Defendant has re-labeled certain of Plaintiff's Products and sold them under Defendant's own mark, violating the Resale Policy and causing consumer confusion.

99.     Defendant physically removed or obstructed view of Plaintiff's marks on the Products and applied his own mark.

100.    Defendant also deceptively described Plaintiff's Products as being "compatible with" Plaintiff's Products, when in fact they *are* Plaintiff's Products.

101.    Defendant's re-labeling of the Products is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products sold by Defendant originate from the Defendant, when in fact they are Plaintiff's Products.

102.    As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

103.    Plaintiff is entitled to recover damages from Defendant's infringement and disgorge any profits from their infringing sales of the Products.

**Count Three**
**Unfair Competition**
**15 U.S.C. §1125(a)**

104.    Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

105.    Plaintiff is the owner of the Trademarks.

106.    Defendant uses the Trademarks in connection with his sale of the Products without Plaintiff's authorization or consent.

107.    The Products sold by Defendant are materially different than genuine Products sold by Plaintiff because Defendant's Products do not come with Plaintiff's consumer warranty, and upon information and belief, Defendant does not abide by Plaintiff's quality controls or offer the necessary level of customer service to customers.

108.    Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products sold by Defendant come with Plaintiff's consumer warranty and have been handled in accordance with Plaintiff's quality controls when, in fact, they do not.

109.    Confusion is more likely given that Defendant lists the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendant's sale of the Products.

110.    Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

111.    Defendant's unauthorized sale of the Products bearing the Trademarks has infringed on and damages the value of the Trademarks.

112.    Defendant informed Plaintiff that his sales of the Products infringed on Plaintiff's rights in the Trademarks.

113.    Defendant has also engaged in deceptive attempts to hijack Plaintiff's brand by filing a fraudulent trademark application with the USPTO, and attempting to use said application to gain control of Amazon's Brand Registry controls with respect to Plaintiff's Products. In the course of such activities, Defendant made false representations about his Products, and others', to the USPTO, Amazon, and the public.

114.    As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

115.    Plaintiff is entitled to recover damages from Defendant's infringement of the Trademarks and disgorge any profits from their infringing sales of the Products.

116.    Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C § 1117(a) because Defendant's infringement of the Trademarks is willful.

## Count Four
### Trademark Dilution (15 U.S.C. § 1125(c))

117.    Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

118.    Plaintiff is the owner of the Trademarks.

119.    Plaintiff has continuously used the Trademarks in commerce and has spent considerable sums in time and money to promote and advertise its Products using the Trademarks.

120.    Plaintiff sells the Products bearing the Trademarks throughout the United States.

121.    Customers have come to associate the Trademarks with Plaintiff and the Products.

122.    Customers associate the Trademarks with high quality wine production equipment.

123.    Defendant is using the Trademarks in connection with the sale of the Products.

124.    However, the Products sold by Defendant are materially different than genuine Products sold by Plaintiff because Defendant's Products do not come with Plaintiff's consumer warranty, and upon information and belief, Defendant does not abide by Plaintiff's quality controls, and Defendant does not offer the necessary level of customer service to customers.

125.    Because Defendant is selling an inferior product, Defendant's use of the Trademarks is causing the dilution of the Trademarks by blurring and tarnishing the reputation and goodwill associated with the Trademarks in violation of 15 U.S.C. § 1125(c).

126.    As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer

immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

127.    Plaintiff is entitled to recover damages from Defendant's infringement of the Trademarks, and disgorge any profits from their infringing sales of the Products.

128.    Plaintiff is further entitled to injunctive relief pursuant to 15 U.S.C. §1116 and increased damages pursuant to 15 U.S.C § 1117(a) because Defendant's infringement and dilution of the Trademarks is willful.

**Count Five**
**Common Law Trademark Infringement**

129.    Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

130.    Plaintiff is the owner of the Trademarks.

131.    Defendant uses the Trademarks in connection with his sale of the Products without Plaintiff's authorization or consent.

132.    The Products sold by Defendant bearing the Trademarks do not come with Plaintiff's consumer warranty. See Ex. A.

133.    Plaintiff requires that all its resellers abide by certain quality controls with respect to the storage, handling, and shipping of the Products. Id.

134.    Plaintiff requires that all resellers provide a level of customer service to all customers of the Products. Id.

135.    Upon information and belief, Defendant does not abide by these quality controls and does not offer the requisite level of customer service.

136.    Because Defendant does not abide by these quality controls or provide the necessary customer service, and because the Products sold by Defendant do not have a

consumer warranty, these Products are not genuine and are materially different from Products sold by Plaintiff or Resellers.

137.    Defendant's unauthorized sale of the Products bearing the Trademarks has infringed on and damages the value of the Trademarks.

138.    Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the materially altered Products sold by Defendant come with Plaintiff's consumer warranty and have been handled in accordance with Plaintiff's quality controls when, in fact, they do not.

139.    Confusion is more likely given that Defendant lists the Products as "New" despite it being a violation of Amazon's Marketplace Items Condition Guidelines to list an item as "New" when it does not come with the manufacturer's warranty as is the case with Defendant's sale of the Products.

140.    Defendant's use of the Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the Products are sponsored by or authorized for sale by Plaintiff, when, in fact, they are not.

141.    Plaintiff informed Defendant that his sales of the Products infringed on Plaintiff's rights in the Trademarks.

142.    As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to the reputation and goodwill of its business and loss of profits in an amount to be proven at trial.

143.    Plaintiff is entitled to recover damages from Defendant's infringement and disgorge any profits from their infringing sales of the Products.

## Count Six
## Common Law Dilution

144.    Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

145.    Plaintiff is the owner of the Trademarks.

146.    Plaintiff has continuously used the Trademarks in commerce and has spent considerable sums in time and money to promote and advertise its Products using the Trademarks.

147.    Plaintiff sells the Products bearing the Trademarks throughout the United States.

148.    Customers have come to associate the Trademarks with Plaintiff and the Products.

149.    Customers associate the Trademarks with high quality home and small commercial operation wine production equipment.

150.    Defendant is using the Trademarks in connection with the sale of inferior Products.

151.    The Products sold by Defendant are materially different than genuine Products sold by Plaintiff because Defendant's Products do not come with Plaintiff's consumer warranty, and upon information and belief, Defendant does not abide by Plaintiff's quality controls, and Defendant does not offer the necessary level of customer service to customers.

152.    Because Defendant is selling an inferior product, Defendant's use of the Trademarks is causing the dilution of the Trademarks by blurring and tarnishing the reputation and goodwill associated with the Trademarks.

153.    As a direct and proximate result of Defendant's continued sale of the Products bearing the Trademarks, Plaintiff has suffered and continues to suffer immediate and irreparable harm, including harm to Plaintiff's business reputation and goodwill.

**Count Seven**
**Declaratory Judgment / Injunctive Relief**

154.   Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

155.   An actual and justiciable controversy exists between Plaintiff and Defendant related to whether Defendant has the right to sell materially altered Products using Plaintiff's trademarks without Plaintiff's consent, and in violation of Plaintiff's rights in the Trademarks; (ii) whether Defendant has the right to pursue registration of Plaintiff's Trademarks; and (iii) whether the manner of Defendant's listing and sale of the Products improperly suggests sponsorship, association, or affiliation, when none exists.

156.   The Court, pursuant to 28 U.S.C. §2201, and Fed. R. Civ. P. 57, should declare that Defendant has no right or authorization to sell the Products or use or register the Trademarks, as these actions have harmed and continue to harm Plaintiff in an amount to be determined at trial.

157. The Court should further declare that the demand letters gave Defendant actual notice that it was not authorized to use the Trademarks, and that Defendant's continued use willfully violates Plaintiff's rights in the Trademarks, as does Defendant's deceptive attempt to register Plaintiff's trademark and seize control of the brand's sales on Amazon.

158.   Additionally, the Court should enjoin Defendant from any further sales of the Products or use of the Trademarks.

## Count Eight
## False or Fraudulent Registration (15 U.S.C. §1120)

159.  Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

160. Defendant's  trademark  application,  with  Serial  Number  90895120, contains multiple factual misrepresentations, including that it has ever produced goods under the name Buon Vino since 2015, and that the re-labeled specimen it included is a Buon Vino product, when it appears that it is actually a Fermtech clamp.

161. Defendant's misrepresentations are intentional and appear calculated to support Defendant's attempt to hijack Plaintiff's brand on the Amazon marketplace.

162.  Plaintiff has been harmed by Defendant's misrepresentations in an amount to be determined at trial.

**WHEREFORE,** Plaintiff prays for judgment as follows:

A.    As to Count One, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of his profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

B.    As to Count Two, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of his profits from all unauthorized sales of the Products, and permanently enjoin Defendant from selling or offering the Products under a false mark;

C.    As to Count Three, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of his profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

D.     As to Count Four, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of his profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

E.     As to Count Five, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of his profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

F.     As to Count Six, award compensatory damages in an amount to be determined at trial, as well as attorney fees and costs, disgorge Defendant of his profits from all unauthorized sales of the Products, and permanently enjoin Defendant from using the Trademarks or selling or offering for sale the Products;

G.     As to Count Seven, a declaratory judgment declaring that Defendant is unauthorized to sell the Products and is willfully violating Plaintiff's rights in the Trademarks, and permanently enjoin Defendant from any further sales of the Products; and

H.     As to Count Eight, award compensatory damages in an amount to be determined at trial.

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Alex E. Jones*

ALEX E. JONES (0095807)
One Cleveland Center
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114
Phone: 216-736-7241
Fax: 216-621-6536
Email: aej@kjk.com
*Counsel for Plaintiff*

**JURY DEMAND**

Plaintiff respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38.

*/s/ Alex E. Jones*

ALEX E. JONES

4889-3958-2212, v. 1